IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Case No.  05-cv-01081-LTB-OES

ROBERT YAKLICH,

Plaintiff,

v.

GRAND COUNTY, a Political Division of the State of Colorado, by and through its BOARD OF
COUNTY COMMISSIONERS OF THE COUNTY OF GRAND, COLORADO,
ROBERT ANDERSON, in his official capacity,
DUANE DAILEY, in his official capacity,
JAMES NEWBERRY, in his official capacity,
TABERNASH MEADOWS WATER AND SANITATION DISTRICT,
IRENE COOK, in his official capacity as President of the Board of Directors of Tabernash
Meadows Water and Sanitation District,
LAURALEE KOURSE, individually and as manager,  Tabernash Meadows Water and Sanitation
District,
BETSY ELIZABETH REDFIELD, in her official capacity as Bookkeeper,  Tabernash Meadows
Water and Sanitation District,
BOARD OF DIRECTORS FOR TABERNASH MEADOWS WATER AND SANITATION
DISTRICT,
BOB ALEXANDER, in his official capacity,
DOUGLAS OURI, in his official capacity,
GRETCHEN BRETZ, in her official capacity,
MR. STOVALL, in his official capacity,
LURLINE UNDERBRINK, in her official capacity as County Manager, Grand County,
WILLIAM GRAY, in his official capacity as Acting Director of Planning, State of Colorado,
Grand County Department of Planning and Zoning,
COLORADO BONDSHARES, a security broker,
FRED KELLY, in his capacity as President of Colorado Bond Shares,
BANK OF THE WEST, a California Corporation authorized to do business in Colorado; and
TERESA TURNER, in her capacity as President of Bank of the West,

Defendants.

_____

ORDER
_____

The plaintiff, Robert Yaklich, tried unsuccessfully to subdivide, develop, and sell 168 acres of real estate in Grand County, Colorado.  The caption of this case reflects that the project involved several parties.  The venture spawned numerous claims here – eleven in all, including for civil conspiracy, outrageous conduct, and other violations of state and federal law – arising out of the failed development.  Acquainted with the underlying dispute through their extensive common business dealings and participation in prior state court and federal bankruptcy proceedings arising out of the same set of transactions, the defendants all move, pursuant to various provisions of Rule 12 and on sundry grounds, for dismissal.

The motions are adequately briefed and oral argument will not materially aid their resolution.  For the reasons stated below, I GRANT the motion of Grand County, the Board of County Commissioners, Robert Anderson, Duane Dailey, James Newberry, William Gray, and Lurline Underbrink; I GRANT the motion of Tabernash Meadows Water and Sanitation District, Irene Cook, Lauralee Kourse, Betsy Elizabeth Redfield, Board of Directors for the Tabernash Meadows Water and Sanitation District, Bob Alexander, Douglas Ouri, Gretchen Bretz, and Mr. Stovall; I GRANT the motion of Colorado BondShares and Fred Kelly; and I GRANT the motion of Bank of the West and Teresa Turner.

## I.  Allegations

I construe the well-pled factual allegations of the Complaint in the light most favorable to Mr. Yaklich and take them as true except to the extent contradicted by external evidence offered for the purpose of contesting jurisdiction.  *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995); *Holt v. United States*, 46 F.3d 1000, 1002-1003 (10th Cir. 1995); *Sutton v. Utah State Sch. for Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  The Complaint consists of scattered

and disjunctive allegations, many of which facially contradict each other.  Nevertheless, read in the most cohesive manner possible, the Complaint alleges the following.

Mr. Yaklich founded and owns alone Tabernash Meadows, LLC ("Meadows"), through which he set about in the 1990's to develop a subdivision known as Pole Creek Valley.  Because the defendant Board of County Commissioners ("Board") required Mr. Yaklich to provide the requisite sewer and water utilities for the project, Mr. Yaklich founded the Tabernash Meadows Water and Sanitation District ("District"), which operates as a quasi-municipal subdivision of the government of the State of Colorado.  On June 1, 2000, Mr. Yaklich personally guaranteed a bond issued to the District for construction of the water and sewer lines within the development. The Complaint contradicts itself concerning the amount of the bond, which was either $5,300,000 or $3,500,000.  Mr. Yaklich anticipated repaying the guaranty with tap fees collected from purchasers of lots in his development.  He secured the guaranty with liens on the real estate.  The guaranty provided that the lien would be partially released with each of Mr. Yaklich's scheduled repayments.

During this time, the defendant Lauralee Kourse approached Mr. Yaklich seeking employment.  When Mr. Yaklich declined, Ms. Kourse allegedly promised to "do everything in her power to personally bankrupt" Mr. Yaklich.  Complaint, 4.  Friction purportedly ensued, as the defendants all conspired to deprive Mr. Yaklich of his property and to force him into bankruptcy.  After first approving Mr. Yaklich's road plan, the Board, according to the Complaint, "arbitrarily, willfully, and wantonly disapproved it."  Complaint, 5.  Other agents of Grand County allegedly "continued to intentionally thwart" Mr. Yaklich's development efforts. *Id*.  Unidentified officials of the County miscalculated the costs of the planned water and sewer

3

treatment facility, which delayed its development.  Absent a completed treatment facility, the County refused to issue occupancy permits to Mr. Yaklich.

Mr. Yaklich attributes other wrongful conduct to individual defendants.  Lurline Underbrink, the County Manager, led an effort to force Mr. Yaklich to build an unnecessary bridge on his property.  Irene Cook, the President of the District's Board of Directors ("Directors"), slandered Mr. Yaklich in the local newspaper and approved unlawful acts that members of the District directed toward Mr. Yaklich.  In 2004, Ms. Kourse, then the manager of the District, falsely informed the Board that water was unavailable in the development at that time.  The Board held private meetings to determine how they would treat Mr. Yaklich at public meetings.  William Gray, the Acting Director of Planning for the County Department of Planning and Zoning, falsely asserted that Mr. Yaklich's infrastructure was not completed according to plan.  Betsy Elizabeth Redfield, the District's Bookkeeper, charged Mr. Yaklich for water fees despite the Board's assertion that no water was available.  The Board, the District, the Directors, Bob Alexander,  Douglas Ouri, Gretchen Bretz, and "Mr. Stovall" all allegedly discouraged a prospective purchaser, Michael Alon, from contracting with Mr. Yaklich by falsely disparaging the condition of the development.  Mr. Yaklich claims not to have learned of the disparagement until early 2005.  After completion of the facility, the defendants continued their alleged conspiratorial abuse of Mr. Yaklich.  Ms. Kourse "arbitrarily, willfully, and wantonly chose not to issue sewer and water taps" for the lots.  Complaint, 6.  Mr. Yaklich, unable to meet his sales projections, now attributes his inability to meet his guaranty repayment obligations to these various failings of the defendants.

In the summer of 2002, the District allegedly obtained from the Bank of the West

4

("Bank") a loan in the amount of $150,000 in order to continue construction of the treatment facility.  As security for this loan, a trust by the name of GRY, LLC pledged two of Mr. Yaklich's lots to the Bank.  The Complaint reveals neither what connection the trust had to Mr. Yaklich or to the District nor what interest it had in the property.  The District allegedly refused to repay the loan, despite having money to do so.  "Instead of suing on the note, Defendant Bank chose to go after the collateral."  Complaint, 6.

In early 2003, the District initiated foreclosure proceedings.  Mr. Yaklich filed for bankruptcy.  During the course of the bankruptcy proceedings, Ms. Underbrink allegedly testified that Mr. Yaklich "had not built the infrastructure properly, knowing this to be untrue."  Complaint, 5.  Ms. Kourse also provided purportedly perjurious testimony.  By their prevarications, "fraudulently and maliciously made," Ms. Underbrink and Ms. Kourse allegedly convinced the bankruptcy court to lift the stay and a state court authorized foreclosure.  Complaint, 7.  In the summer of 2004, Ms. Kourse allegedly told the Board that no water services existed on Mr. Yaklich's land.  Knowing this statement to be untrue, Ms. Kourse nonetheless "did this so Plaintiff could not sell his land, hoping that he would lose it to foreclosure."  *Id*.  The District obtained the land in the subsequent foreclosure and is now selling subdivided lots.

The defendant Colorado BondShares ("BondShares"), having purchased the District's bond, did not foreclose upon the first mortgage it held on the land.  (The Complaint does not explain the fault that Mr. Yaklich attributes to BondShares for this strategy.)  Other allegations against BondShares, being somewhat enigmatic, I quote in full.

Defendant [BondShares], under the direction of Defendant [Fred] Kelly [its President] (as was typical), refused to give credit to Plaintiff for the debt he paid on his loan.  Rather, Defendant [BondShares] gave the money Plaintiff paid to Defendant District.  Further,

when Defendant District would sell land Plaintiff lost to foreclosure, Defendant
[BondShares] would not use that money to credit Plaintiff's debt.  It was only when
Plaintiff sued Defendant [BondShares] that Defendant [BondShares] decided to properly
credit Plaintiff for his debt payments.

When lots sold, Defendant [BondShares] refused to give Plaintiff credit for the sales or
release its judgment against Plaintiff.

Defendant [BondShares] also improperly took title to lot 48 of Pole Creek Valley in May
of 2005.  Defendant [BondShares] started foreclosure proceedings for this lot in early
2005 (which it should not have done since it had already received a judgment against
Plaintiff for the same property.)  Plaintiff paid off the loan in full around March of 2005.
Defendant [BondShares] still improperly completed the foreclosure in May of 2005.

Complaint, 8.

Finally, Mr. Yaklich alleges that the Bank; Teresa Tuner, the Bank's President;

Bondshares; and Mr. Kelly all met in private on various occasions to determine how they would

force him into bankruptcy.  He does not say when he believes these meeting occurred or what

advantage the lenders obtained from forcing him to stay their own alleged foreclosure

proceedings.

Mr. Yaklich provided notice of his claims to "all required defendants" on March 2, 2005.

The claims are: 1) civil conspiracy against all the defendants; 2) conspiracy to deprive Mr. Yaklich

of his civil rights in violation of 42 U.S.C. § 1985(3) against the District, Ms. Cook, Ms. Kourse,

Ms. Redfield, Ms. Underbrink, Mr. Gray, the Directors, Mr. Alexander, Mr. Ouri, Ms. Bretz, and

Mr. Stovall; 3) violation of 42 U.S.C. § 1986 against the Board, the Directors, Mr. Alexander,

Mr. Ouri, Ms. Bretz, and Mr. Stovall; 4) intentional interference with prospective relations against

the Board, the District, the Directors,  Mr. Alexander, Mr. Ouri, Ms. Bretz, Mr. Stovall, and Ms.

Kourse; 5) intentional interference with a contract against the Board, the District, the Directors,

Mr. Alexander, Mr. Ouri, Ms. Bretz, and Mr. Stovall; 6) a regulatory taking in violation of the

Fifth and Fourteenth Amendments to the United States Constitution against the Board, the

District, the Directors,  Mr. Alexander, Mr. Ouri, Ms. Bretz, and Mr. Stovall; 7) deprivation of

procedural due process in violation of 42 U.S.C. § 1983 against the Board, the District, the

Directors,  Mr. Alexander, Mr. Ouri, Ms. Bretz, Mr. Stovall, Ms. Kourse, Ms. Underbrink, Ms.

Cook, and Mr. Gray; 8) "outrageous conduct" (intentional infliction of emotional distress) against

all the defendants; 9) civil conversion against the Board, the District, the Directors,  Mr.

Alexander, Mr. Ouri, Ms. Bretz, Mr. Stovall, Ms. Kourse; 10) breach of contract against the

Directors and the District; and 11) conspiracy in violation of the United States Constitution and

42 U.S.C. § 1983 against the Board, the Directors, the District, Ms. Kourse, Ms. Underbrink, Ms.

Cook, and Mr. Gray.  Though other factual allegations scattered throughout the Complaint

implicate claims for defamation, commercial disparagement, and violations of state county-

governance statutes, the elements of those offenses are not alleged and the parties do not

recognize any such claims in their briefs.

## II.  Discussion

The defendants move for dismissal on various grounds.  I consider the defenses raised

according the issues implicated in each, beginning with challenges to my jurisdiction.

**A.**	***Rooker-Feldman***

BondShares and Mr. Kelly (collectively, the "Bondshares Defendants") contest my

jurisdiction to hear the claims against them, which, they argue, are inextricably intertwined with

the prior state court and federal bankruptcy court proceedings to which Mr. Yaklich referred in

the Complaint.  Under the *Rooker-Feldman* doctrine, I have no jurisdiction to hear appeals from

final judgments of state courts.  *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L.

Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983).  Because 28 U.S.C. § 1257 grants appellate jurisdiction over state court judgments to the Supreme Court, it follows that no court of the United States other than the Supreme Court may entertain a proceeding to reverse or modify such judgments.  *Id.*

The Supreme Court recently clarified the scope of the *Rooker-Feldman* jurisdictional bar in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, __ U.S. __, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005) and criticized the circuit courts for expanding application of the doctrine beyond its scope.  The Court has since vacated various circuit court decisions, including some authority on which the BondShares Defendants rely, instructing lower courts to reconsider their holdings in light of its *Exxon Mobil* decision.  *See*, *e.g.*, *Guttman v. Khalsa*, 401 F.3d 1170 (10th Cir. 2005), *cert. granted*, *vacated*, __ U.S. __, 126 S. Ct. 321, __ L. Ed. 2d __ (2005).  Application of the doctrine to this case, therefore, demands a careful reading of the *Exxon Mobil* decision.

The Court in *Exxon Mobil* reversed a circuit court's dismissal for lack of subject-matter jurisdiction of a federal case parallel to a state-court proceeding.  The Court, examining *Rooker* and *Feldman*, explained,

> In both cases, the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.  Plaintiffs in both cases, alleging federal-question jurisdiction, called upon the District Court to overturn an injurious state-court judgment.

*Exxon Mobil*, 125 S. Ct at 1526.  The Court concluded that neither *Rooker* nor *Feldman* "supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court." *Id*. at 1527.

I find some clues concerning how the Tenth Circuit might apply the *Rooker-Feldman* doctrine after *Exxon Mobil*. On June 29, 2005, in an unpublished opinion, the Tenth Circuit acknowledged – in fact, quoted from – *Exxon Mobil* and applied the same test that it had applied before the Supreme Court issued that decision. *Cory v. Fahlstrom*, 143 Fed. Appx. 84 (10th Cir. 2005). Judge McConnell, writing for a unanimous panel, stated,

> Mr. Cory's RICO claim alleges a byzantine conspiracy between Ms. Fahlstrom, her attorneys, and the state court judge to defraud Mr. Cory through the Kansas state court system. This is a claim that he was injured by the state court judgment, which is precisely the type of claim prohibited by the *Rooker-Feldman* doctrine. ... Consequently, we are without subject matter jurisdiction to consider this claim.

*Id*. at 87.

On July 27, 2005, a three-judge panel, comprised of two circuit court judges and one district court judge, convened pursuant to 28 U.S.C. § 2284, handed down its decision in *Lance v. Davidson*, 379 F. Supp. 2d 1117 (D. Colo. 2005), dismissing certain claims because the Colorado Supreme Court had decided the issues by final judgment in a prior proceeding. The *Lance* court, like the *Cory* court, read *Exxon Mobil* narrowly, interpreting it to mean only that "the federal claim must not be parallel to the state-court claim." *Id*. at 1124. The Lance court went on to apply the Tenth Circuit test that had applied before *Exxon Mobil*, adding that "only if the federal claim was filed after the state-court judgment will *Rooker-Feldman* deprive [lower federal courts] of jurisdiction." *Id*.

Evidently, the Tenth Circuit has concluded that, however narrowly the *Exxon Mobil* Court intended to circumscribe the *Rooker-Feldman* doctrine, it did not reduce the doctrine's purview to only actions that directly seek invalidation of state-court judgments. In light of these holdings, it appears that actions premised upon injuries resulting from prior state-court judgments are also

9

barred.  As the *Cory* court affirmed, *Rooker-Feldman* prohibits a party losing in state court from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's rights.  *Cory*, 143 Fed. Appx. at 87, *quoting*, *Kiowa Indian Tribe of Oklahoma v. Hoover*, 150 F.3d 1163, 1169 (10th Cir. 1998).

Mr. Yaklich complains of the effects upon him of two judgments entered against him in Denver District Court.  After Mr. Yaklich defaulted on his guarantees, BondShares' predecessor-in-interest obtained the judgments in its favor and assigned both to BondShares.  Subsequent foreclosures, authorized by the Grand County District Court, have resulted in Mr. Yaklich's loss of the collateral and sales partially satisfying the judgments.  Mr. Yaklich argues that BondShares' conduct during the litigation that led to the judgments was "conspiratorial and outrageous." Plaintiff's Combined Opposition to Each Defendant's Motion to Dismiss, 22.

Two problems with this argument make themselves apparent.  First, BondShares did not litigate the actions underlying the judgment.  Rather, BondShares succeeded in interest to two judgments that a state court had already entered.  Second, and more to the point, Mr. Yaklich's pursuit in this case of damages resulting from entry of the judgments is precisely the type of action barred under *Rooker-Feldman*.  *Cory*, 143 Fed. Appx. at 87.  Consequently, claims one and eight are dismissed against the BondShares Defendants.

**B.     Immunity**

The Board, its individual members – Robert Anderson, Duane Dailey and James Newberry – Ms. Underbrink, and Mr. Gray (collectively, the "County Defendants"), and the District, the Directors – Mr. Alexander, Mr. Ouri, Ms. Bretz, Mr. Stovall – Ms. Cook, Ms. Kourse, and Ms.

Redfield (collectively, the "District Defendants") argue that Mr. Yaklich's state law claims against them– the first, fourth, fifth, eighth, and ninth – are barred by the Colorado Governmental Immunity Act, Colo. Rev. Stat. § 24-10-101 *et seq.* ("Immunity Act") because Mr. Yaklich failed to provide timely notice of his claims.  (Though the District is a quasi-municipal body, Mr. Yaklich does not dispute that the Immunity Act applies to it.)

The Immunity Act provides, *inter alia*, that public entities and their employees are immune from civil suit for actions taken in their official capacities unless written notice of the claim is properly given.  Notice must be given

> within one hundred eighty days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury. Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.

Colo. Rev. Stat. § 24-10-109.

The Immunity Act is a not a tort accrual statute but rather a non-claim statute, raising a jurisdictional bar if notice is not given within the applicable time period.  *Trinity Broadcasting v. Westminster*, 848 P.2d 916, 923 (Colo. 1993).  However, the Immunity Act's use of the term "discovery" in the context of tortious injury implicates the discovery rule of tort law.  *Id.*  By that reasoning, the notice requirement accrued when Mr. Yaklich discovered, or through the exercise of reasonable diligence, should have discovered, his injuries.  *Id.*

Mr. Yaklich bears the burden of demonstrating that the County Defendants and District Defendants are not immune from suit and that jurisdiction exists over his claims.  *Ibid* at 925; *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  An unresolved factual dispute concerning when Mr. Yaklich was injured would preclude dismissal here.  *Miller v.*

*Campbell*, 971 P.2d 261, 263 (Colo. App. 1998), *reh'g denied* (1998), *cert. denied* (1999). However, I am empowered to resolve factual disputes concerning the sufficiency of Mr. Yaklich's notice and to make the necessary findings without converting the defendants' Rule 12(b)(1) motion into a motion for summary judgment. *Id*; *Neiberger v. Hawkins*, 208 F.R.D. 301, 308 (D. Colo. 2002). Indeed, I am charged with determining when Mr. Yaklich first knew, or should have known, of his tortious injuries. *Maestas v. Lujan*, 351 F.3d 1001, 1016 (10th Cir. 2003).

The County Defendants have proffered the bankruptcy court order ("Bankruptcy Order"), granting relief from the stay, to which Mr. Yaklich referred in the Complaint. I note that Meadows, not Mr. Yaklich, was the debtor in that action. Nevertheless, because Mr. Yaklich is the sole owner of Meadows, because he alleged in his Complaint to have been familiar with the circumstances of the relief from the stay, and because he was intimately familiar with the consequences of the relief, namely foreclosure upon his property, I can only infer that Mr. Yaklich was aware of the contents of the Bankruptcy Order on or about the date it issued – April 14, 2004. Indeed, Mr. Yaklich does not deny that fact.

The Bankruptcy Order is clear and thorough. The judge explained in elucidative detail the circumstances of the development and financing of the District – Mr. Yaklich served as chairman of the Directors from the District's inception until November, 2002; represented all sides in the negotiations between Meadows, himself, and the District; and encumbered the real estate, later foreclosed upon, in both his capacities as manager of Meadows and as president of the District – and mentioned the "checkered and sometimes contentious process" that preceded the County's delayed plat approval.

The Bankruptcy Order refers to the disputes between Meadows, Mr. Yaklich, the Board,

12

and the District over the nature of Mr. Yaklich's guaranty, the priority and extent of liens on the property, the District's obligation to assign and release taps, completion of the water systems, and the issuance of building permits.  The Bankruptcy Order details the repeated failures of Mr Yaklich and Meadows to meet sales projections and to repay the guaranty obligations and the extraordinary lengths to which the District, under Mr. Yaklich's direction, went to avoid enforcing its contractual and property rights against Meadows.  In fact, the District on several occasions acted against its own interests, at one time releasing some of its liens so that Mr. Yaklich could encumber the property with liens running to a third-party lender.  Only after Mr. Yaklich resigned from the Directors did the District foreclose upon its liens, then significantly in default, and then only at BondShares' insistence.

The Bankruptcy Order also sets forth in some detail the then-current status of the development.  These findings must have been drafted in light of any perjurious testimony that Ms. Underbrink and Ms. Kourse offered about the condition of the infrastructure.  Indeed, the Bankruptcy Order refers to the evidentiary hearing from which the judge derived the findings, and states that the parties "presented several witnesses, Yaklich, [the homeowners association], and District representatives... ."  Bankruptcy Order, 11.  Based upon its findings, the court granted the lienholders relief from the stay and allowed the foreclosures to proceed.

No evidentiary hearing is necessary.  I find and conclude that the only reasonable inference to be drawn from the allegations of the Complaint and the undisputed contents of the Bankruptcy Order is that Mr. Yaklich was aware of the injuries of which he here complains – the insufficient sales, loss of his real estate, the financial collapse of Meadows – well before September 3, 2004, 180 days before the March 2, 2005 notice.  The Immunity Act "does not permit an injured party

13

to ignore evidence that would cause a reasonable person to know that he or she has been injured by the tortious conduct of another." *Abrahamson v. City of Montrose*, 77 P.3d 819, 821 (Colo. App. 2003). The Bankruptcy Order foreclosed to Mr. Yaklich the option of ignoring any tortious conduct by the County or District Defendants.

Mr. Yaklich specifically alleged in the Complaint that he did not learn of the Board's, the District's, the Directors', and Ms. Kourse's alleged interference in his prospective contract with Mr. Alon until "early 2005." I take that allegation as true. Nevertheless, the fourth claim must also be dismissed. "[T]o start the running of the CGIA notice period, a claimant need only have discovered that he or she has been wrongfully injured, and need not yet know the cause of the injury or the extent of the damage." *Ibid*. Mr. Yaklich's allegation in the fifth claim that he did not learn of the County and District Defendants' interference with his purported contract with the County until "late 2004" is, for the same reason, insufficient to defeat dismissal.

## C.  Ripeness

The County and District Defendants ask for dismissal of the sixth claim, for a regulatory taking, and seventh claim, for violation of procedural due process premised upon the alleged regulatory taking, on the ground that Mr. Yaklich has not pursued his state-law remedies. They cite *Williamson County Regional Planning Com'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985) for the rule that, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id*. at 195. Until he avails himself of available state remedies, Mr. Yaklich has suffered no violation of the Just Compensation Clause and has not been denied due process. *Bateman v. City of West*

14

*Bountiful*, 89 F.3d 704, 709 (10th Cir. 1996).

Mr. Yaklich does not claim to have pursued compensation from the State of Colorado for the alleged inverse condemnation of his property. Instead, he first argues that no condemnation review procedure is available and so he has satisfied *Williamson*. That argument finds its answer in Colo. Rev. Stat. §§ 38-1-101 *et seq.*, in which the Colorado general assembly created a procedure by which property owners may challenge inverse condemnations and seek compensation. *See*, *National Advertising Co. v. City and County of Denver*, 912 F.2d 405, 413-414 (10th Cir. 1990); *First Bet Joint Venture v. City of Central City By and Through City Council*, 818 F. Supp. 1409, 1411-1413 (D. Colo. 1993).

*Patsy v. Board of Regents of State of Fla.*, 457 U.S. 496, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982) is not to the contrary. In that decision, the Court rejected the argument that exhaustion of state administrative remedies must precede initiation of a Section 1983 action. The question here – whether a takings claim exists in the first place until the State has denied Mr. Yaklich just compensation – is much different.

Second, Mr. Yaklich argues that prosecution of an inverse condemnation claim against the County and District Defendants would have been futile; they had made clear their intention to oppose him at all costs. To state this argument is to refute it. I note only that Mr. Yaklich's fatalistic resignation is as premature as are his takings claims.

**D.       Redundancy**

Mr. Anderson, Mr. Dailey, Mr. Newberry, Mr. Gray, Ms. Underbrink, Ms. Cook, Ms. Kourse, Ms. Redfield, Mr. Alexander, Mr. Ouri, Ms. Bretz, and Mr. Stovall correctly point out that the claims against them in their official capacities are redundant of the claims against the

Board and the District.  *Johnson v. Board of County Com'rs for County of Fremont*, 85 F.3d 489, 493 (10th Cir. 1996), *cert. denied sub nom.*, *Greer v. Kane*, 519 U.S. 1042, 117 S. Ct. 611, 136 L. Ed. 2d 536 (1996).  However, I find no authority under which I might dismiss them from the suit on that ground.  Indeed, retention of those parties in this suit would work no hardship; they have no stake in the outcome of the litigation as individuals and their participation in discovery and the trial will undoubtedly be the same no matter whether or not their names appear on the caption.

**E.      Conspiracy**

The Bank and Ms. Turner doubt that Mr. Yaklich has stated a claim against them for conspiracy because he has not alleged that they committed an unlawful overt act.  "To establish a civil conspiracy in Colorado, a plaintiff must show: 1) two or more persons; 2) an object to be accomplished; 3) a meeting of the minds on the object or course of action; 4) an unlawful overt act; and 5) damages as to the proximate result."  *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995); *Scott v. Hern*, 216 F.3d 897, 918 (10th Cir. 2000).  "[T]he purpose of the conspiracy must involve an unlawful act or unlawful means.  A party may not be held liable for doing in a proper manner that which it had a lawful right to do."  *Nelson*, 908 P.2d at 106.  Without an allegation that the Bank and Ms. Turner committed, or participated in the commission of, an unlawful overt act, conspiracy liability may not be imposed against them.  *Id*. at 107-108.

The Complaint alleges one overt act by the Bank and Ms. Turner; they foreclosed on the collateral.  Where, as here, the act alleged to constitute the underlying wrong provides no cause of action, the Complaint states no cause of action for the conspiracy itself.  *Double Oak Const., L.L.C. v. Cornerstone Development Intern., L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003).  Also,

16

assuming that the first claim can be read as one for conspiracy to breach the contractual terms of the note or security interest, the claim still fails; the breach of a contract cannot serve as the basis for civil conspiracy. *Logixx Automation, Inc. v. Lawrence Michels Family Trust*, 56 P.3d 1224, 1231 (Colo. App. 2002).

Mr. Yaklich argues that the Bank and Ms. Turner conspired with the other defendants, who allegedly perjured themselves, defamed him, and so forth. Mr. Yaklich has not alleged that the Bank and Ms. Turner participated in any unlawful activities and they do not bear responsibility for events to which they did not contribute. Assuming, as Mr. Yaklich alleges, that the defendants conspired together to deprive him of his property – a lawful end – and that the Bank and Ms. Turner pursued that goal by foreclosing on the Bank's lien – a lawful means – it does not follow that other defendants' alleged employment of unlawful means implicates the Bank and Ms. Turner in civil conspiracy. "It is... essential that each particular defendant who is to be charged with responsibility shall be proceeding tortiously, which is to say with the intent requisite to committing a tort, or with negligence." *Resolution Trust Corp. v. Heiserman*, 898 P.2d 1049, 1057 (Colo. 1995).

## F.     Intentional infliction of emotional distress

Similarly, the Bank and Ms. Turner argue that foreclosure on Mr. Yaklich's property cannot, as a matter of law, constitute outrageous conduct. I agree. It is axiomatic that an exercise of one's rights by lawful means cannot constitute outrageous conduct, even if one knows that emotional distress is likely to result. *Bigby v. Big 3 Supply Co.*, 937 P.2d 794, 800 (Colo. App. 1996); Restatement (Second) of Torts § 46 comment g (1965).

## G.     Class-based conspiratorial discrimination

The County and District Defendants move pursuant to Rule 12(b)(6) for dismissal of the second and third claims.  The essential elements of a claim under 42 U.S.C. § 1985(3) are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom.  *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993), *cert. denied*, 510 U.S. 1093, 114 S. Ct. 925, 127 L. Ed. 2d 218 (1994).

The Supreme Court has held that, in order to allege a Section 1985(3) conspiratorial deprivation of equal protection against private persons, Mr. Yaklich must allege that 1) some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action, and 2) the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment.  *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-268, 113 S. Ct. 753, 122 L. Ed. 2d 34 (1993).  The Tenth Circuit has held that the first prong of this test also applies in claims for conspiracies carried out under color of state law.  *Abercrombie v. City of Catoosa, Okl.*, 896 F.2d 1228, 1231 n.2 (10th Cir. 1990).

Mr. Yaklich alleges that the defendants discriminated against him because of his gender.  The County and District Defendants doubt that the male gender can ever be a protected class for the purposes of Section 1985.  They cite *Weidman v. Thomas*, 794 F. Supp. 1070, 1072 (D. Kan. 1992) for the proposition that it cannot.  The *Weidman* court did not explain its holding.

In *United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 835, 103 S. Ct. 3352, 77 L. Ed. 2d 1049 (1983) the Supreme Court ruled that discrimination based upon membership in an economic or commercial class is insufficient to support a Section 1985 claim.  The Court there described as a "close question" whether Section

18

1985 could reach class-based animus other than against blacks. *Id*. at 837. Following that decision, the Tenth Circuit held that handicapped persons do not constitute a class of persons protected under Section 1985. *Wilhelm v. Continental Title Co.*, 720 F.2d 1173, 1176-1177 (10th Cir. 1983), *cert. denied*, 465 U.S. 1103, 104 S. Ct. 1601, 80 L. Ed. 2d 131 (1984)  The *Wilhelm* court opined,

> [W]e find nothing therein to give any encouragement whatever to extend § 1985 to classes other than those involved in the strife in the South in 1871 with which Congress was then concerned. In fact from *Scott* we get a signal that the classes covered by § 1985 should not be extended beyond those already expressly provided by the Court.

*Id*. at 1177.

Following the dicta from *Wilhelm*, judges of this Court have declined to extend Section 1985 protection to Norwegians, *Bauge v. Jernigan*, 671 F. Supp. 709, 712 (D. Colo. 1987), and Caucasian males, *Moore By and Through Blakely v. City and County of Denver, Colo.*, 744 F. Supp. 1028, 1031 (D. Colo. 1990). Thus, even if Mr. Yaklich could prove that the defendants conspired to discriminate against him because of his gender – a doubtful proposition, given that most of the defendants are males – Section 1985 would afford him no remedy.

Because Mr. Yaklich has failed to state a claim under Section 1985(3), the third claim, for neglect or refusal to prevent commission of the conspired scheme, in violation of 42 U.S.C. § 1986, also must be dismissed. *Taylor v. Nichols*, 558 F.2d 561, 568 (10th Cir. 1977).

**H.      Section 1983 conspiratorial discrimination**

The defendants move for dismissal, pursuant to Rule 12(b)(6), of Mr. Yaklich's eleventh claim for conspiratorial discrimination in violation of 42 U.S.C. § 1983. Mr. Yaklich must allege specific facts demonstrating the requisite agreement and concerted action to support a Section

1983 conspiracy claim. *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir.1998). Conclusory allegations will not suffice. *Id.* This heightened pleading standard applies to allegations, like those stated here, of conspiracy between private individuals and state officials. *Scott v. Hern*, 216 F.3d 897, 907 (10th Cir. 2000).

Mr. Yaklich has alleged that the Bank met privately with BondShares, Mr. Kelly, and the District to determine how best to force him into bankruptcy. However, alleging that the defendants met together is insufficient to demonstrate a conspiracy. *Tonkovich*, 159 F.3d at 533.

Mr. Yaklich argues that his numerous specific allegations of wrongdoing against individual defendants demonstrate a conspiracy. However, he has not alleged the manner in which the conspiracy operated, the connection between the alleged individual wrongful acts, or how those acts were intended to further the conspiratorial purpose. *Montgomery v. City of Ardmore*, 365 F.3d 926, 939-940 (10th Cir. 2004). In short, nothing appears in the Complaint from which I might infer a meeting of the minds between the defendants on a conspiratorial goal. *McLaurin v. New Rochelle Police Officers*, 368 F. Supp. 2d 289, 295 (S.D.N.Y. 2005).

## I.     Breach of contract

Of the myriad claims and allegations, then, only Mr. Yaklich's breach of contract claim against the District remains. The District argues that this claim sounds in tort and is, therefore, barred by application of the Immunity Act. Mr. Yaklich has alleged that the District and the Directors were parties to the guaranty agreement and that they breached the terms of that agreement, causing him to default. This claim clearly sounds in contract and the District and Directors therefore are not immune from it. *Rocky Mountain Health Maintenance Organization, Inc. v. Colorado Dept. of Health Care Policy and Financing ex rel. Rizzuto*, 54 P.3d 913, 917-

918 (Colo. App. 2001).

Jurisdiction fails for another reason, however.  Mr. Yaklich alleges in the Complaint that he is a resident of the State of Colorado.  There being no remaining federal claims on which to premise supplemental jurisdiction and no diversity of citizenship, the tenth claim must be dismissed without prejudice.

Accordingly, it is ORDERED that

1) the motion to dismiss of Grand County, the Board of County Commissioners, Robert Anderson, Duane Dailey, James Newberry, William Gray, and Lurline Underbrink [29, 35] is GRANTED;

2) the motion to dismiss of Tabernash Meadows Water and Sanitation District, Irene Cook, Lauralee Kourse, Betsy Elizabeth Redfield, Board of Directors for the Tabernash Meadows Water and Sanitation District, Bob Alexander, Douglas Ouri, Gretchen Bretz, and Mr. Stovall [32] is GRANTED;

3) the motion to dismiss of Colorado BondShares and Fred Kelly [30] is GRANTED;

4) the motion to dismiss of Bank of the West and Teresa Turner [31] is GRANTED;

5) all claims are dismissed with prejudice except the tenth, which is dismissed without prejudice; and

6) judgment shall enter in favor of all defendants on all claims, with costs.

Dated: November __15__, 2005, in Denver, Colorado.

BY THE COURT:


__s/Lewis T. Babcock_____
Lewis T. Babcock, Chief Judge